# EXHIBIT 5

Trials@uspto.gov
571-272-7822

Paper 34
Date: November 19, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

GOOGLE LLC,
Petitioner,

v.

AGIS SOFTWARE DEVELOPMENT, LLC,
Patent Owner.

---

IPR2018-01079
Patent 8,213,970

---

Before TREVOR M. JEFFERSON, CHRISTA P. ZADO, and KEVIN C. TROCK, *Administrative Patent Judges.*

ZADO, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining All Challenged Claims Unpatentable
*35 U.S.C. § 318(a)*

# I. INTRODUCTION

We have authority to hear this *inter partes* review under 35 U.S.C. § 6. This Final Written Decision issues pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. For the reasons discussed herein, we determine that Google LLC ("Petitioner")[1] has shown, by a preponderance of the evidence, that claims 1 and 3–9 ("challenged claims") of U.S. Patent No. 8,213,970 B2 (Ex. 1001, "the '970 patent") are unpatentable. *See* 35 U.S.C. § 316(e) (2012); 37 C.F.R. § 42.1(d) (2017).

## *A. Procedural History*

Petitioner filed a Petition for *inter partes* review of claims 1 and 3–9 of the '970 patent. Paper 2 ("Pet." or "Petition"). AGIS Software Development, LLC ("Patent Owner")[2] subsequently filed a Preliminary Response. Paper 6 ("Prelim. Resp."). Petitioner field an authorized Reply to Patent Owner's Preliminary Response. Paper 8. On November 20, 2018, the Board entered a decision instituting an *inter partes* review of all claims and all grounds presented in the Petition. Paper 9 ("Institution Decision" or "Inst. Dec.").

After institution, Patent Owner filed a Response to the Petition. Paper 17 ("Response" or "PO Resp."). Petitioner thereafter filed a Reply to Patent Owner's Response. Paper 22 ("Pet. Reply" or "Reply"). Patent Owner filed a Sur-reply to Petitioner's Reply to Patent Owner's Response.

---

[1] Pursuant to 37 C.F.R. § 42.8, Petitioner identifies as real parties-in-interest Google LLC, Huawei Device USA Inc., Huawei Device Co., Ltd., Huawei Device (Dongguan) Co., Ltd., Huawei Technologies USA Inc., Huawei Technologies Co., Ltd., and LG Electronics, Inc. Pet. 79.

[2] Pursuant to 37 C.F.R. § 42.8, Patent Owner identifies only itself as a real party-in-interest. Paper 5, 1.

Paper 27 ("Sur-reply"). Patent Owner also filed a Request for Rehearing of the Institution Decision, Paper 12, which we denied, Paper 26.

An oral hearing was held on Sept. 5, 2019. A transcript of the hearing is included in the record. Paper 33 ("Tr.").

### *B. Related Matters*

The parties advise that the '970 patent has been asserted in *AGIS Software Development LLC v. Huawei Device USA Inc. et al.,* No. 2:17-cv-00513 (E.D. Tex.); *AGIS Software Development LLC v. HTC Corporation,* No. 2:17-cv-00514 (E.D. Tex.); *AGIS Software Development LLC v. LG Electronics, Inc.,* No. 2:17-cv-00515 (E.D. Tex.); *AGIS Software Development LLC v. Apple Inc.*, No. 2:17-cv-00516-JRG (E.D. Tex.); *AGIS Software Development LLC v. ZTE Corporation et al.,* No. 2:17-cv-00517 (E.D. Tex.). Pet. 79–80; Paper 5, 3–4. Patent Owner further advises that the '970 patent and patents related to the '970 patent are the subject of various filings requesting *inter partes* review. Paper 5, 2–3 (table identifying *inter partes* review case numbers)

### *C. The '970 Patent*

The '970 patent generally discloses a specialized software application program on a personal computer ("PC") or PDA/cell phone for creating and processing forced message alerts. Ex. 1001, code (57). The specification of the '970 patent ("Specification") discloses it is desirable for a PDA/cell phone user to be able to simultaneously send Digital Smart Message Service ("SMS") or TCP/IP messages to a large group of PCs or cell phones using cellular technology (such as GSM or CDMA) or WiFi. *Id.* at 1:51–57. The Specification further discloses that in some situations it is additionally desirable to know which PCs and PDA/cell phones received the message, which PCs and PDA/cell phones did not receive the message, and the

response of each recipient of the message. *Id.* at 1:57–61. "As a result, what is needed is a method in which a sender of a text or voice message can force an automatic acknowledgement upon receipt from a recipient's cell phone or PC and a manual response from the recipient via the recipient's cell phone or PC." *Id.* at 1:65–67. In addressing these issues, the Specification discloses "[t]he heart of the invention lies in [a] forced message alert software application program provided in each PC or PDA/cell phone." *Id.* at 4:47–49. The software provides the ability to

> (a) allow an operator to create and transmit a forced message alert from a sender PDA/cell phone to one or more recipient PCs and PDA/cell phones within the communication network; (b) automatically transmit an acknowledgement of receipt to the sender PDA cell phone upon the receipt of the forced message alert; (c) periodically resend the message to the recipient PCs and PDA/cell phones that have not sent an acknowledgement; (d) provide an indication of which recipient PCs and PDA/cell phones have acknowledged the forced message alert; (e) provide a manual response list on the display of the recipient PC and PDA/cell phone's display that can only be cleared by manually transmitting a response; and (f) provide an indication on the sender PDA/cell phone of the status and content the manual responses.

*Id.*, code (57). The Specification explains that a forced message alert is comprised of a text or voice message and a forced message alert software packet. *Id.* at 2:11–13, 8:23–25

### D. *Illustrative Claims*

Petitioner challenges claims 1 and 3–9 of the '970 patent. Pet. 12. Claims 1 and 6 are independent. Claim 1, reproduced below, is illustrative.

> 1. A communication system for transmitting, receiving, confirming receipt, and responding to an electronic message, comprising:

[1.1] a predetermined network of participants, wherein each participant has a similarly equipped PDA/cell phone that includes a CPU and a touch screen display and a CPU memory;

[1.2] a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations;

[1.3] a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message;

[1.4] a forced message alert software application program including a list of required possible responses to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone;

[1.5] means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone;

[1.6] means for requiring a required manual response from the response list by the recipient in order to clear the recipient's response list from recipient's cell phone display;

[1.7] means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert;

> [1.8] means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert; and
>
> [1.9] means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded.

Ex. 1001, 8:65–9:39 (brackets and numbering added).

Claim 6, reproduced below, also is illustrative.

> 6. A method of sending a forced message alert to one or more recipient PD A/cell phones within a predetermined communication network, wherein the receipt and response to said forced message alert by each intended recipient PDA/cell phone is tracked, said method comprising the steps of:
>
> [6.1] accessing a forced message alert software application program on a sender PDA/cell phone;
>
> [6.2] creating the forced message alert on said sender PDA/cell phone by attaching a voice or text message to a forced message alert application software packet to said voice or text message;
>
> [6.3] designating one or more recipient PDA/cell phones in the communication network;
>
> [6.4] electronically transmitting the forced message alert to said recipient PDA/cell phones;
>
> [6.5] receiving automatic acknowledgements from the recipient PDA/cell phones that received the message and displaying a listing of which recipient PDA/cell phones have acknowledged receipt of the forced message alert and which recipient PDA/cell phones have not acknowledged receipt of the forced message alert;

> [6.6] periodically resending the forced message alert to the recipient PDA/cell phones that have not acknowledged receipt;
>
> [6.7] receiving responses to the forced message alert from the recipient PDA/cell phones and displaying the response from each recipient PDA/cell phone; and
>
> [6.8] providing a manual response list on the display of the recipient PDA/cell phone that can only be cleared by the recipient providing a required response from the list;
>
> [6.9] clearing the recipient's display screen or causing the repeating voice alert to cease upon recipient selecting a response from the response list required that can only be cleared by manually selecting and transmitting a response to the manual response list.

Ex, 1001, 10:7–41 (brackets and numbering added).

### *E. Prior Art and Asserted Grounds of Unpatentability*

Petitioner asserts that claims 1 and 3–9 would have been unpatentable on the following grounds (Pet. 12):

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 1, 3–9 | 103(a) | Kubala,[3] Hammond[4] |
| 1, 3–9 | 103(a) | Hammond, Johnson,[5] Pepe[6] |
| 1, 3–9 | 103(a) | Hammond, Johnson, Pepe, Banerjee[7] |

Petitioner relies on the declaration of David Hilliard Williams, Ex. 1003 ("Williams Declaration"), and the supplemental declaration of Mr. Williams, Ex. 1023 ("Williams Supplemental Declaration"), to support its contentions.

## II. ANALYSIS

### *A. Legal Principles*

A claim is unpatentable under § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). The question of obviousness is resolved on the basis of underlying factual determinations, including (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) when in evidence, objective indicia of non-obviousness

[3] U.S. Patent Publication 2006/0218232 A1, filed March 24, 2005 and published September 29, 2006. Ex. 1005 ("Kubala").
[4] U.S. Patent 6,854,007 B1, filed September 17, 1998 and issued Febuary 8, 2005. Ex. 1006 ("Hammond").
[5] U.S. Patent 5,325,310, filed June 26, 1992 and issued June 28, 1994. Ex. 1007 ("Johnson").
[6] U.S. Patent 5,742,905, filed September 19, 1994 and issued April 21, 1998. Ex. 1008 ("Pepe").
[7] U.S. Patent Publication 2003/0128195 A1, filed January 8, 2002 and published July 10, 2003. Ex. 1009 ("Banerjee").

(i.e., secondary considerations).[8] *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). "To satisfy its burden of proving obviousness, a petitioner cannot employ mere conclusory statements. The petitioner must instead articulate specific reasoning, based on evidence of record, to support the legal conclusion of obviousness." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016).

### *B. Level of Ordinary Skill in the Art*

Petitioner asserts that a person of ordinary skill in the art in the field of the '970 patent would have had either (1) a Bachelor of Science degree in electrical engineering or an equivalent field, with three to five years of academic or industry experience in the field of electronic communications, or (2) a Master of Science degree in electrical engineering or an equivalent field, with two to four years of academic experience in the same field. Pet. 9–10 (citing Ex. 1003 ¶¶ 29–30).

Patent Owner asserts that a person of ordinary skill in the art would have had at least a bachelor's degree in computer science, computer engineering, or equivalent with one to two years of experience in the field of computer programming with a focus on building systems such as GPS-based localization and network transmission. PO Resp. 7 (citing Ex. 2005 ¶¶ 18–20). Patent Owner further asserts that extensive experience and technical training might substitute for educational requirements, while advanced degrees might substitute for experience. *Id.* (citing Ex. 2005 ¶¶ 18–20).

The parties agree that an ordinarily skilled artisan in the field of the '970 patent would have had a bachelor's degree in the pertinent technical

---

[8] Neither party presents arguments or evidence of secondary considerations, which therefore do not constitute part of our analysis.

field, and a few years of experience and/or more advanced education in the pertinent field. Therefore, we determine a person of ordinary skill in the art would have had a bachelor's degree in electrical engineering, computer science, or computer engineering, or equivalent, and two to four years of additional experience, either work or educational, in the field of electrical communications. We do not adopt Patent Owner's assessment that a skilled artisan would have focused on building systems such as GPS-based localization and network transmission. PO Resp. 7. Patent Owner fails to explain how this is pertinent to the field of the '970 patent, which relates to providing computers and/or PDA/cell phones with forced message alert software that enables users to create and send message alerts.

We note that the level of skill in the art also may be reflected in the prior art. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001); *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995); *In re Oelrich*, 579 F.2d 86, 91 (CCPA 1978).

### C. *Claim Construction*

#### 1. *Introduction*

In an *inter partes* review filed before November 13, 2018, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent.[9] Consistent with that standard, we assign claim terms their ordinary and customary meaning, as would be understood by one of ordinary skill in the art at the time of the invention, in

[9] This standard applies to *inter parties* reviews filed before November 13, 2018. 77 Fed. Reg. 48727 (Aug. 14, 2012) (codified at 37 C.F.R. § 42.100(b)), as amended at 81 Fed. Reg. 18766 (Apr. 1, 2016); *see also* 83 Fed. Reg. 51340 (Oct. 11, 2018) (amending 37 C.F.R. § 42.100(b) effective November 13, 2018) (now codified at 37 C.F.R. § 42.100(b) (2019)).

the context of the entire patent disclosure. *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).

We note that the district court issued an order construing terms of the ’970 patent in *AGIS Software Development LLC v. Huawei Device USA Inc. et al.,* No. 2:17-cv-00513 (E.D. Tex.) on October 10, 2018. Ex. 3001, 9–29 (“District Court Claim Construction Order”). We have considered the district court’s constructions.

*2. Terms to be Construed Expressly*

Petitioner proposes that we construe as means-plus-function under 35 U.S.C. § 112, ¶ 6, the terms in claim 1 that include the word “means,” i.e., limitations 1.2 and 1.5 to 1.9. Pet. 10–12. Patent Owner agrees these terms should be construed as means-plus-function, and further argues we should adopt the constructions entered in the district court proceeding for the purposes of consistency across proceedings. Prelim. Resp. 9–14.[10]

We agree these terms should be construed under § 112, ¶ 6. A claim limitation is presumed to invoke § 112, ¶ 6, when it uses the term “means” in combination with functional language, as is the case here. *Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1356 (Fed. Cir. 1999). Having determined limitations 1.2 and 1.5 to 1.9 are to be construed under § 112, ¶ 6, below we set forth identification of the function recited in each

---

[10] We note that prior to institution, Patent Owner did not provide any proposal regarding construction of limitations 1.2 and 1.5 to 1.9, *see generally* Prelim. Resp., and we adopted preliminary constructions based on Petitioner’s proposals, as well as the evidence in the record at the time, Inst. Dec. 9–16. After institution, Patent Owner proposed that we construe the limitations in accordance with the district court’s constructions, but did not provide any argument or evidence to support its proposal other than to argue that the Board’s constructions should be consistent with that of the district court. PO Resp. 9–14.

limitation and the corresponding structure in the written description of the Specification that performs each function. *See Asyst Techs, Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369 (Fed. Cir. 2001) ("The first step in construing a means-plus function limitation is to identify the function explicitly recited in the claim. The next step is to identify the corresponding structure set forth in the written description that performs the particular function set forth in the claim.") (citations omitted).

In addition, although neither party proposes a construction for the term "forced message alert," Patent Owner's arguments regarding claim limitation 1.5 raise an issue regarding the construction of this term. PO Resp. 14–18. Therefore, we also address Patent Owner's interpretation of the term "forced message alert."

We determine that no other claim terms require express construction. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

*3. (limitation 1.2) "data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations"*

We construe the term "data transmission means" under 35 U.S.C. § 112, ¶ 6. The parties agree that the function is to "facilitate the transmission of electronic files between said PDA/cell phones in different locations," as recited in limitation 1.2. Pet. 10; PO Resp. 10. We agree that this is the recited function.

Petitioner asserts that the corresponding structure is a server that communicates according to either (1) Wifi, WiMax, or other peer-to-peer communications or (2) SMS, TCP/IP, or other messaging protocols. Pet. 10

(citing Ex. 1001, 4:1–36). Patent Owner proposes we adopt the district court's determination that the corresponding structure is a "communications network server; and equivalents thereof." PO Resp. 10; Ex. 3001, 10. In pertinent part, both parties assert the corresponding structure is a *server*.

Neither party, however, explains why the corresponding structure is a server. Petitioner provides a bare assertion, without any explanation as to why its construction is correct, and cites to Mr. William's declaration which likewise includes a bare assertion without any explanation. Pet. 10 (citing Ex. 1003 ¶ 33). Patent Owner does not explain why we should adopt its construction, other than we should do so "for the purposes of consistency" with the district court's construction. PO Resp. 10.

Although Petitioner does not provide any explanation, Petitioner cites to a description of a communication server that forwards data addressed from one network participant to another, "thus permitting the transmission of forced message alerts, other text and voice messages, photographs, video, E-mail, and URL data" between network participants. Pet. 10 (citing Ex. 1001, 4:1–6). Notably, the Specification does not refer to a server as a transmission means. Neither party addresses other descriptions in the Specification that refer explicitly to two types of transmission means. The Specification refers to the Internet as a transmission means: "[t]o operate on the network, obviously the PC must be on and have an active connection to the Internet or other digital *transmission means*." Ex. 1001, 3:43–45 (emphasis added). The Specification also refers to communications protocols, such as TCP/IP, as digital *transmission means*: "[a] plurality of PCs and PDA/cell phones each having forced alert software installed providing a communication network . . . with the ability to: 1) allow an operator to create and transmit (via TCP/IP or another digital *transmission*

*means*) a forced voice alert." *Id.* at 2:7–11 (emphasis added). Nor do the parties address claim 2, which depends directly from claim 1, and recites "wherein said data transmission means is TCP/IP or another communications protocol." *Id.* at 9:40–63.

Based on our review of claim 2 and the above-noted disclosure in the Specification, we determine the corresponding structure for a "data transmission means" is "a PDA/cell phone programmed to implement transmission of a forced message alert using TCP/IP or another communications protocol, and equivalents thereof."

We note that the district court's claim construction order does not provide analysis as to why a server is the corresponding structure for a "data transmission means," instead stating that the construction was agreed upon by the parties. Ex. 3001, 10. Furthermore, there is no indication in the district court's claim construction order that the court considered the language of claim 2, or the portions of the Specification we discuss above about the network and communications protocols being *transmission means*. *Id.*

#### 4. *"means for . . ." (limitations 1.5 to 1.9)*

##### *a) Introduction*

As we discussed above, we construe limitations 1.5 to 1.9 under 35 U.S.C. § 112, ¶ 6. *Supra* Sec. III.C.2. For each of limitations 1.5 to 1.9, the parties agree that the recited function is the respective recitation following the words "means for" (except for limitation 1.5, for which Petitioner asserts the function is less than the entire recitation after "means for," discussed below). Pet. 10–12; PO Resp. 10–14. As set forth below, for each of limitations 1.5 to 1.9, we determine that the recited function is the entire recitation of the respective limitation following the words "means for."

With regard to the functions specified in limitations 1.5–1.9, Petitioner contends that the corresponding structure is a computer configured to implement or perform the algorithm recited in the function. Pet. 10–12. As to limitations 1.5, 1.6, and 1.8, Patent Owner essentially agrees with Petitioner, except that Patent Owner asserts the structure is a PC or PDA/cell phone configured to implement or perform the algorithm. PO Resp. 10–14. For limitations 1.7 and 1.9, Patent Owner asserts the corresponding structure is a hardware display and hardware transmitter. *Id.* at 12–14.

For reasons discussed below, *infra* Sec. II.C.4.a.1, we determine the corresponding structure in limitations 1.5, 1.6, and 1.8 is a PDA/cell phone, programmed to carry out an algorithm that performs the recited function. For limitations 1.7 and 1.9, we determine that PDA/cell phone hardware including a display, such as display 16, and a wireless receiver and/or transceiver, and equivalents thereof, corresponds to the receiving function. *Infra* Sec. II.C.4.2.

*(1) Limitations 1.5, 1.6, and 1.8*

Limitations 1.5, 1.6, and 1.8 are computer-implemented means-plus-function limitations because the disclosed structure is a special purpose computer programmed to perform a disclosed algorithm. *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999) (explaining that for computer-implemented means-plus-function limitations, "the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm"). The Specification indicates that PCs and PDA/cell phones are computing devices that include special software—i.e., the forced message alert software application program—programmed to perform the functions recited in limitations 1.5, 1.6, and 1.9. Ex. 1001, 3:41–43 ("Each PC described herein

is like any other contemporary PC, except that it has the forced message alert software application program installed on it.”); *see also id.* at 3:29–31 (“Each PDA/cell phone described herein . . . can function just as any other cell phone . . . [i]n addition . . . it has the forced message alert software application program.”), 4:27, 4:36 (disclosing that the PDA/cell phone includes a CPU).

Because the disclosed structure is a special purpose computer, the Specification must disclose an algorithm for performing the claimed function. *See, e.g., Noah Systems Inc. v. Intuit Inc.,* 675 F.3d 1302, 1312 (Fed. Cir. 2012).

For the foregoing reasons, we determine that the corresponding structure for the respective functions recited in each of limitations 1.5, 1.6, and 1.8 is a PDA/cell phone programmed to carry out an algorithm. Below we identify the algorithm disclosed for performing the claimed functions. *Infra* Sec. III.C.4.a.1.a–c.

*(a) (limitation 1.5) “means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone”*

For limitation 1.5, Petitioner asserts that the specified function is “attach a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by a sender PDA/cell phone to a recipient PDA/cell phone.” Pet. 10 (citing Ex. 1001, 8:65–9:39 (claim 1)). Without explanation, Petitioner omits the remainder of limitation 1.5, which recites “said forced message alert software packet

containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone." Petitioner does not adequately explain, nor do we discern why, the remaining language recited in element 1.5 should not be construed as part of the specified function. Patent Owner asserts the recited function includes the entire recitation following "means for" in limitation 1.5. PO Resp. 10. We agree with Patent Owner, and determine the specified function includes the entire recitation following "means for" in limitation 1.5.

For the structure corresponding to the specified function of limitation 1.5, Petitioner identifies the forced message alert software application program functionality described at Ex. 1001, 7:43–63 and Figure 3A. Pet. 10. Patent Owner asserts we should adopt "the algorithm disclosed . . . at 7:8–8:36; and equivalents thereof." PO Resp. 11.

We find that the disclosure identified by Petitioner describes the recited function because it discloses the steps of a process for sending a forced message alert, except that it does not expressly describe "attaching" the forced message alert software packet to a voice or text message. Ex. 1001, 7:43–63; Fig. 3A. However, it is implied that this step occurs because a user types a text or records a voice message, and a forced message alert is sent, *id.* at 7:43–63, and elsewhere the Specification explains that the software allows a user to create a forced message alert comprising a voice or text message and forced message alert software packet, *id.* at 2:9–13.

The district court, and Patent Owner, also identify Ex. 1001, 7:8–42 and 8:1–36 as disclosing the algorithm. PO Resp. 11; Ex. 3001, 15–18. We find the disclosure at Ex. 1001, 7:8–20 corresponds to the recited function

because it describes as part of the process that the forced message alert software packet contains a list of possible required responses (*see, e.g.*, limitation 1.5, "said forced message alert software packet containing a list of possible required responses"). We also find Ex. 1001, 8:25–30 corresponds to the recited function because it discloses transmitting an automatic acknowledgement receipt (*see, e.g.*, limitation 1.5, "requiring the forced message alert software . . . to transmit an automatic acknowledgement receipt").

However, the district court and Patent Owner are over-inclusive in their citation to the '970 patent disclosure. The district court and Patent Owner cite to continuous blocks of text that disclose not just the algorithm corresponding to the recited function, but also features not recited in the function. We do not incorporate into our construction features that do not perform the recited function. "Section 112 paragraph 6 does not 'permit incorporation of structure from the written description beyond that necessary to perform the claimed function.' Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claims limitations." *Asyst Techs*, 268 F.3d at 1369–70 (citations omitted).

We find that the features disclosed at Ex. 1001, 7:21–42, 8:1–25 and 8:31–36 are not part of the algorithm for performing the function recited in limitation 1.5. For example, Ex. 1001, 7:21–42 describes repeating a message at a defined rate until a user makes a selection from a required response list. The disclosure at Exhibit 1001, 8:1–25 and 8:31–36 describes features unrelated to the recited function including a sender PC or PDA/cell phone monitoring for manual responses, and a recipient PC or PDA/cell

phone separating a forced message alert packet from a text or voice message. None of these features are part of the function specified in limitation 1.5.

For the foregoing reasons, we determine that the corresponding structure is a PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 2:11–13, 7:8–20, 7:43–63, 8:25–30, and Fig. 3A, and equivalents thereof.

*(b) (limitation 1.6) "means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"*

For the structure corresponding to the specified function of limitation 1.6, Petitioner identifies the forced message alert software application program functionality described at Ex. 1001, 8:39–46 and Figure 4. Pet. 11. Patent Owner asserts we should adopt "the algorithm disclosed . . . at 8:37–57; and equivalents thereof." PO Resp. 12.

We find that the disclosure identified by Petitioner, which relates to the scenario in which a text message is received, describes the applicable algorithm. The disclosure describes a means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display, namely by causing a text message and response list to be shown on a recipient PC or PDA/cell phone until a manual response is selected from the response list, and clearing the forced alert text only after the user of the recipient device has selected a response. Ex. 1001, 8:39–46. We also find the disclosure at Ex. 1001, 8:46–51, which relates to receipt of voice messages, describes the applicable algorithm, as contended by Patent Owner, because the recited function also encompasses scenarios in which voice messages are received.

However, contrary to Patent Owner's assertion, we find the disclosure at Ex. 1001, 8:37–39 and 8:52–57, does not describe the algorithm for the recited function. Patent Owner does not provide any explanation to support its position, other than its argument that the district court included this disclosure in its claim construction. PO Resp. 11–12. The disclosure at Ex. 1001, 8:37–39 and 8:52–57 describes the forced voice alert software application program "effectively tak[ing] control" of the recipient device and releasing effective control of the recipient PDA/cell phone. Ex. 1001, 8:37–39, 8:52–57. However, the function specified in limitation 1.6 does not mention taking or releasing control of the PDA/cell phone. On the other hand, claim 2, which depends directly from claim 1, explicitly claims a means for taking control of the recipient PDA/cell phone. Ex. 1001, 9:46–54 ("means for controlling of the recipient PDA/cell phone upon transmitting said automatic acknowledgment and causing . . . the text message and a response list to be shown on the display of the recipient PDA cell phone"). Accordingly, we find the feature of taking and releasing control of the PDA/cell phone does not constitute part of the algorithm that achieves the function recited in limitation 1.6, and does not serve as a limitation on the claim. *Cf. Asyst Techs*, 268 F.3d at 1369–70 ("Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claims limitations").

For the foregoing reasons, we determine that the corresponding structure is a PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 8:39–46 and the portions of Figure 4 described at 8:39–46, and equivalents thereof.

*(c) (limitation 1.8) "means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"*

For the structure corresponding to the specified function of limitation 1.8, Petitioner identifies the forced message alert software application program functionality described at Ex. 1001, 8:6–9 and Fig. 3A and 3B. Pet. 11–12. Patent Owner asserts we should adopt the "the algorithm disclosed . . . at 7:64–8:8; and equivalents thereof." PO Resp. 13.

We are persuaded that Ex. 1001, 8:6–8[11] and the corresponding step in Figure 3B (second step) provide sufficient detail to disclose the applicable algorithm because they disclose "[t]he sender PC or PDA/cell phone will then periodically resend the forced message alert to the PC or PDA/cell phone that have not acknowledged receipt," and "[t]he sender cell phone, integrated PDA/cell phone or PC periodically resends the message alert to the recipient cell phones, integrated PDA/cell phones or PCs that have not acknowledged receipt," respectively. Ex. 1001, 8:6–8.

Patent Owner is over-inclusive because the disclosure at Ex. 1001, 7:64–8:5 describes features unrelated to the function recited in limitation 1.8. *Cf. Asyst Techs*, 268 F.3d at 1369–70 ("Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claims limitations"). The features relate, for example, to monitoring for and receiving acknowledgments of receipt of forced message alerts, Ex. 1001, 7:64–67,

---

[11] Petitioner includes line 9 of column 8, but this appears to be in error. Line 9 begins a new paragraph and contains only the sentence fragment, "The sender PC or PDA/cell phone also monitors for and," which is unrelated to the recited function. Therefore, we exclude line 9 from the algorithm.

and the sender PC or PDA/cell phone providing an indication on a display of which of the recipients have and have not acknowledged receipt, Ex. 1001, 8:1–5.

For the foregoing reasons, we determine that the corresponding structure is a PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 8:6–8 and corresponding step in Fig. 3B (second step in Figure 3B), and equivalents thereof.

*(2) Limitations 1.7 and 1.9 – (limitation 1.7) "means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"; (limitation 1.9) "means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the responses from each recipient PDA/cell phone that responded"*

For the structure corresponding to the specified function of limitation 1.7, Petitioner identifies the forced message alert software application program functionality described at Ex. 1001, 7:64–8:5 and Figures 3A and 3B. Pet. 11. For the structure corresponding to the specified function of limitation 1.9, Petitioner identifies the forced message alert software application program functionality described at Ex. 1001, 8:9–15 and Figures 3A and 3B. *Id.* at 12.

Patent Owner contends the corresponding structure is "PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof." PO Resp. 12–14.

Therefore, the dispute raised by the parties' proposals is whether the corresponding structure is: (1) a computer configured to implement or perform an algorithm, or (2) a hardware transmitter (presumably for "receiving") and a hardware display (presumably for "displaying"). We

adopt Patent Owner's approach, namely that the corresponding structures are a hardware display and receiver and/or transceiver. With regard to the function of displaying, the Specification discloses a hardware display of the PDA/cell phone (*see, e.g.*¸Figure 1, LCD display 16) that displays an indication of which recipients have sent acknowledgements and an indication of the response from each recipient cell phone. Ex. 1001, 8:1–5, 8:12–15. As to the function of receiving, the Specification discloses that the PC and PDA/cell phone can communicate using WiFi or WiMax, both of which are wireless, and the PDA/cell phone can communicate over a wireless cellular network, thereby indicating the PC and PDA/cell phone each have a wireless receiver and/or transceiver for receiving automatic acknowledgements. Ex. 1001, 4:7–11.

Therefore, we find the corresponding structure is PDA/cell phone hardware including a display, such as display 16, and a wireless receiver and/or transceiver, and equivalents thereof.

We decline to adopt Patent Owner's proposal that a wireless *transmitter* performs the receiving function, because a transmitter transmits rather than receives. PO Resp. 12–14. We also decline to adopt Patent Owner's proposal that a "cellular modem" corresponds to the receiving function because Patent Owner does not identify any disclosure in the Specification of a cellular modem performing the receiving function. *Id.*

*b) "forced message alert"*

Claim 1 recites (Ex. 1001, 9:14–23) (emphasis added):

> means for attaching a forced message alert software packet to a voice or text message creating a *forced message alert* that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the

> forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone.

Claim 6 recites (Ex. 10:7–11, 14–17) (emphasis added):

> A method of sending a forced message alert to one or more recipient PDA/cell phones . . . said method comprising the steps of . . . creating the *forced message alert* on said sender PDA/cell phone by attaching a voice or text message to a forced message alert application software packet to said voice or text message.

Neither party proposes a construction for the term "forced message alert." *See* Pet. 8–12; *see also* PO Resp. 9–14. However, in its discussion of patentability, Patent Owner argues Kubala's email message 214 with mandatory response flag 216 (asserted "forced message alert") is not a "forced message alert" because it is not "forced to the display without any action on the part of the recipient." PO. Resp. 15–18; Sur-Reply 11–15. In doing so, Patent Owner seeks to write a negative limitation, i.e., forcing a message to the display *without any action on the part of the recipient*, into claims 1 and 6. In light of Patent Owner's argument, we consider whether a "forced message alert" should be interpreted as a message that must be forced to the display without any action on the part of the recipient.

We begin with the language of the claims viewed in light of the Specification. The negative limitation Patent Owner seeks to write into claims 1 and 6 appears nowhere in the language of the claims. *See, e.g.,* Pet. Reply 4–6 (arguing limitation 1.5 does not impose the restriction asserted by Patent Owner). The claim language makes clear that a "forced message alert" is created by attaching a forced message alert software packet to a voice or text message. Ex. 1001, 9:14–15 (claim 1, "means for attaching a forced message alert software packet to a voice or text message

*creating a forced message alert*") (emphasis added); *see also* Ex. 1001, 10:14–17 (claim 6, "*creating the forced message alert* on said sender PDA/cell phone by attaching a voice or text message to a forced message alert application software packet to said voice or text message") (emphasis added). Accordingly, by the very language of the claims, a message is *forced* because it is attached to a *forced* message alert software packet. Nothing in the claim language indicates that what makes the message *forced* is forcing its display without any action on the part of the recipient.

The Specification reinforces the understanding that a forced alert is a message with a forced alert software packet attached thereto, disclosing that forced alert software provides the ability to "create and transmit (via TCP/IP or another digital transmission means) a forced voice alert, wherein said forced voice alert is comprised of a text or voice massage file and a forced alert software packet." Ex. 1001, 2:7–13.

Accordingly, the claim language viewed in light of the Specification is unambiguously clear—a "forced message alert" is a message (e.g., text or voice) attached to a forced message alert software packet.

Patent Owner argues, nonetheless, that we should read its proposed negative claim limitation into the term "forced message alert" based on disclosure in the Specification that upon detection of a forced message alert, a recipient PDA/cell phone transmits an automatic acknowledgement of receipt to the sender, and after transmitting the receipt, the forced voice alert software application program effectively takes control of the recipient PDA/cell phone. PO Resp. 16 (citing Ex. 1001, 8:25–39). Patent Owner also relies on disclosure in the Specification that states "the forced message alert software application program causes the text message and the response list to be shown on the display of the recipient until selection of a manual

response from the response list." PO Resp. 17 (citing Ex. 1001, 8:37–44); *see also* Sur-reply 12–14.

Patent Owner's reliance on the cited disclosure is unavailing for several reasons. First, the disclosure cited by Patent Owner does not specify that the message alert is displayed *without any action on part of the recipient*, and does not preclude a user from first opening the message before being presented with a display of the message. Ex. 1001, 8:25–44. Patent Owner's argument appears to be that the software's effective taking control of the PDA/cell phone, disclosed at Ex. 1001, 8:37–39, implies a recipient can no longer perform actions that would cause a forced message alert to be displayed, thereby suggesting messages are forced to the display without any action on the part of the recipient. PO Resp. 16. However, we do not find this persuasive because the Specification does not preclude steps such as a user performing acts, e.g., opening a message, that lead to display of the forced alert message.

Second, even if we were to infer that the Specification is describing forcing the message to a display without any action by the recipient, we do not discern a reason to write such a requirement into the claims that appears nowhere in the claim language. *See SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("Though understanding the claim language may be aided by the explanations contained in the written description, it is important not to import into a claim limitations that are not a part of the claim.").

Review of the claims as a whole confirms that we should not read Patent Owner's proposed requirement into the term "forced message alert." If we were to adopt Patent Owner's view, it would be inconsistent with Patent Owner's, and our, interpretation above of limitation 1.5 of claim 1.

As we discussed above, we construe limitation 1.5 as reciting means-plus-function, and we determine the structure corresponding to the specified function is a PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 2:11–13, 7:8–20, 7:43–63, 8:25–30, and Fig. 3A, and equivalents thereof. *Supra* Sec. II.C.4.a.1.a; *see also* PO Resp. 10–11 (Patent Owner submitting this limitation should be construed as a means-plus-function term). Therefore, if we were to read into limitation 1.5 a requirement of forcing a forced message alert to a display without any action on part of the recipient, there would need to be supporting disclosure in the Specification of an algorithm for performing this function. *Noah Sys., Inc.* v. *Intuit Inc.,* 675 F.3d 1302, 1312 (Fed. Cir. 2012) (citing *Aristocrat Techs. Australia Pty Ltd.* v. *Int'l Game Tech.,* 521 F.3d 1238, 1333) (Fed. Cir. 2008)). However, as we discussed above, the Specification does not disclose an algorithm sufficient to perform the negative limitation proposed by Patent Owner, i.e., forcing a message to the display without any action on part of the user.

We note the algorithm we identify for limitation 1.5, *supra* Sec. II.C.4.a.1.a, does not disclose forcing a forced message alert to a display without any action on part of the recipient. Ex. 1001, 2:11–13, 7:8–20, 7:43–63, 8:25–30, Fig. 3A. Furthermore, there is no such requirement even under Patent Owner's proposed construction because not even Patent Owner's proposed algorithm discloses forcing a forced message alert to a display without any action on part of the recipient. PO Resp. 11 (asserting the algorithm is disclosed at Ex. 1001, 7:8–8:36); *see also* Pet. Reply 4–6.

For the foregoing reasons, we conclude that a "forced message alert" should not be interpreted as a message that must be forced to the display without any action on the part of the recipient.

5. *Summary*

Our constructions for limitations 1.2 and 1.5 to 1.9 are summarized below:

| Limitation | Specified Function | Corresponding Structure |
|---|---|---|
| 1.2 | facilitate the transmission of electronic files between said PDA/cell phones in different locations | a PDA/cell phone programmed to implement transmission of a forced message alert using TCP/IP or another communications protocol, and equivalents thereof |
| 1.5 | attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone | PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 2:11–13, 7:8–20, 7:43–63, 8:25–30, and Fig. 3A, and equivalents thereof |
| 1.6 | requiring a required manual response from the response list by the recipient in order to clear the recipient's response list from recipient's cell phone display | PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 8:39–46 and the portions of Figure 4 described at 8:39–46, and equivalents thereof |
| 1.7 | receiving and displaying a | PDA/cell phone hardware |

| Limitation | Specified Function | Corresponding Structure |
|---|---|---|
| | listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert | including a display, such as display 16, and a wireless receiver and/or transceiver, and equivalents thereof |
| 1.8 | periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert | PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 8:6–8 and corresponding step in Fig. 3B (second step in Figure 3B), and equivalents thereof |
| 1.9 | receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the responses from each recipient PDA/cell phone that responded | PDA/cell phone hardware including a display, such as display 16, and a wireless receiver and/or transceiver, and equivalents thereof |

### *D. Asserted Obviousness Over Kubala and Hammond*

As noted above, Petitioner asserts claims 1 and 3–9 of the ’970 patent would have been obvious over the combination of Kubala and Hammond. Pet. 12; Pet. Reply 2–15. Patent Owner contends Petitioner has not shown unpatentability of claims 1 and 3–9 on this ground. PO Resp. 14–28; Sur-reply 7–15. For the reasons stated below, we determine Petitioner has demonstrated, by a preponderance of the evidence, that claims 1 and 3–9 are unpatentable under § 103 as obvious over the combination of Kubala with Hammond.

| | | | | |
|---|---|---|---|---|
| 1, 3–9 | § 103(a) | Kubala, Hammond, Johnson, Pepe | | 1, 3–9 |
| 1, 3–9 | § 103(a) | Kubala, Hammond, Johnson, Pepe, Banerjee | | 1, 3–9 |
| **Overall Outcome** | | | 1, 3–9 | |

IV. ORDER

In consideration of the foregoing, it is hereby

ORDERED that Petitioner has demonstrated by a preponderance of the evidence that claims 1 and 3–9 of U.S. Patent No. 8,213,970 B2 are *unpatentable*; and

FURTHER ORDERED that because this is a Final Written Decision, any party to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2

FOR PETITIONER:

Jonathan Tuminaro
jtuminar-ptab@sternekessler.com

Robert Sokohl
rsokohl-ptab@sternekessler.com

Karen Wong-Chan
kwchan-ptab@sternekessler.com

FOR PATENT OWNER:

Vincent Rubino
vrubino@brownrudnick.com

Peter Lambrianakos
plambrianakos@brownrudnick.com

Enrique Iturralde
eiturralde@brownrudnick.com