# EXHIBIT 8

UNITED STATES PATENT AND TRADEMARK OFFICE

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

LG ELECTRONICS INC. and LG ELECTRONICS USA, INC.,
Petitioners

v.

IMAGE PROCESSING TECHNOLOGIES, LLC,
Patent Owner.

# PETITION FOR *INTER PARTES* REVIEW OF U.S. PATENT NO. 6,959,293

’293 Patent interchangeably refers to the output of the classifier (which is the input to the validation unit) as either a classification signal or as a time coincidences signal. *Id.*, 2:22–28, 21:9, 9:27–41, Fig. 3, Claim 1.

Pirim explains that generally the purpose of the classifier is to select for pixels that meet a specified criteria. Ex-1018, 27–29. For example, if a given histogram unit is processing the speed parameter, the classifier could be programmed to output a signal of “1” if the pixel had a speed value in the desired range, and “0” otherwise. *Id.* Other histogram units similarly classify other parameters such as hue, luminance, direction, etc. *Id.* The resulting classification signals are transferred to the validation unit of each other histogram unit via bus 23. *Id.* The validation unit of each histogram unit can then check whether each parameter from each classifier (for the given pixel) meets all of the specified speed, hue, luminance, direction, etc. criteria. *Id.* If all of those criteria are met, then the validation unit outputs a value of “1,” which enables incrementation. *Id.*

### 2. Incorporated Documents

Incorporation by reference requires “the host document” to “identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents,” and is judged using the “standard of” a POSITA. *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 906–07 (Fed. Cir. 2018) (cites/quotes omitted). In *Paice*, the host document stated:

> This application discloses a number of improvements over and enhancements to the hybrid vehicles disclosed in the inventor's ***U.S. Pat. No. 5,343,970 (the "'970 patent") [Severinsky], which is incorporated herein by this reference***. Where differences are not mentioned, it is to be understood that the specifics of the vehicle design shown in the '970 patent are applicable to the vehicles shown herein as well.

*Id*. The Federal Circuit found the entirety of the Severinsky document was incorporated by reference:

> The first sentence of this passage is broad and unambiguous. It states that Severinsky "is," without qualification, incorporated into the '817 application "by this reference"—i.e., the reference contained in the sentence. The sentence identifies with detailed particularity the specific material subject to incorporation (Severinsky, and not just particular portions thereof) and where that material can be found (U.S. Patent No. 5,343,970). Such language is plainly sufficient to incorporate Severinsky in its entirety.

*Id*., 907. The Federal Circuit did ***not*** limit the incorporation to "the hybrid vehicles," nor did it limit the incorporation based on the discussion of "differences not mentioned…." *Id*.

Here, Pirim states:

> The present invention discloses an application of the generic image processing system disclosed in commonly-owned ***PCT Application Serial Nos. PCT/FR97/01354 and PCT/EP98/05383, the contents of which are incorporated herein by reference*** for detection of various criteria associated with the human eye, and especially to detection that a driver is falling asleep while driving a vehicle.

Ex-1018, 10. As in *Paice*, Pirim's incorporation is unambiguous: the "***contents***" of the two applications, identified clearly and particularly by number, are incorporated by reference, without limitation. Similar to *Paice*, Pirim does not state that the incorporated material is limited to the some sub-part or sub-component of the "generic image processing system" disclosed in those applications. Rather, Pirim unambiguously incorporates the "contents" of the applications. The clause "for detection of various criteria…" also does not limit the incorporation by reference—it simply states the reason the "contents" of the two documents are being incorporated (the reason being for use in a new application—drowsy driving). PCT/EP98/05383 does not discuss detecting a "human eye" or a "driver falling asleep." Thus, the "for detection…" clause is not a reference to any particular subpart of that document, much less a statement limiting which "contents" are being incorporated. Instead, this clause simply states the reason the drafter incorporated the documents.

PCT/EP98/05383 was publicly available through WIPO and the EPO at the time Pirim published (it was a priority document). Ex-1028 at 196–262 (WIPO file history marking Pirim as received on April 15, 1999); Ex-1027 at 111 (Rule 17.2(c), effective 1999, requiring WIPO to "furnish a copy of the priority document upon request" to the public); Ex-1023, 312–377 (EPO file history showing PCT/EP98/05383); Ex-1026, Article 128(4) (allowing public access to

EPO file histories), Article 150(3).

The other incorporated document, PCT/FR97/01354, was publicly available because it published in 1998. Ex-1024; Ex-1025.

An incorporated document is viewed "as if it were explicitly contained" in the host document. *Paice*, 881 F.3d at 906. One of the incorporated documents discloses numerous exemplary applications for using Pirim's histogram processor 22a, including tracking a "person" in a videoconference, tracking a target on the ground from a helicopter, weapons targeting, or tracking any general single target or multiple targets. Ex-1021, 29, 32, 34, 36–37. In one of Pirim's incorporated embodiments, Figure 20 shows multiple targets, such as potential targets for a "weapons targeting system[]." *Id.*, 34.

FIG. 20




*Id.*, 34:21–27, Figs. 20 and 23. Pirim explains the details of configuring the processor to track a single target, such as target 218, as shown in Figure 23. *Id.*, 34–36.



*Id.*, Fig. 23.

Pirim then discloses material that meets the "common parameter" construction. Pirim explains that "while the invention has been described with respect to tracking a ***single*** target, it is foreseen that ***multiple*** targets may be tracked, each with user defined classification criteria, ***by replicating the various elements of the invention***." *Id.*, 37. Similarly, for a "***single*** target," the system could be configured by "replicating" histogram processor 22a, meaning the system would use "two histogram formation processors of the type shown in Fig. 11" (which is renumbered to be Figure 12 in Pirim). *Id.* With two histogram processors, a second processor could be used to "continue to track a target if, for example, the target stopped and the track based upon velocity and direction was lost, since the target could still by tracked by" alternative criteria, such as "color." *Id.* The second histogram processor 22a includes histogram blocks that process the same parameters as the first processor 22a, meaning there are at least two

histogram blocks that form histograms representative of a common parameter. For example, there would be two histogram blocks for the x-position parameter, two for the y-position parameter, etc. *See* Ex-1018, Fig. 12.

### B. Overview of Bolle

United States Patent No. 5,546,475 ("Bolle") issued on August 13, 1996, and qualifies as prior art under at least pre-AIA 35 U.S.C. § 102(b).

Bolle describes an "image processing" system for "recognizing (i.e., identifying, classifying, grading, and verifying) objects using computerized optical scanning devices." Ex-1019, 1:6–10. It explains that "[i]mage processing systems ...for recognizing objects ...use histograms to perform this recognition. One common histogram method either develops a gray scale histogram or a color histogram from a (color) image containing an object. These histograms are then compared directly to histograms of reference images." *Id.*, 1:14–22.

Bolle uses a video camera to capture produce, such as apples or grapes, going through a checkout process in a grocery store:

histogram 1450. *Id*. The grapes and leaves can then be identified by comparing their histograms to reference histograms for grapes and leaves. *Id*., 19:28–38.

## VIII. LEVEL OF ORDINARY SKILL IN THE ART

A person of ordinary skill in the art ("POSITA") at the time of the alleged invention of the '293 Patent would have had either (1) a master's degree in Electrical Engineering or Computer Engineering or the equivalent plus at least a year of experience in the field of image processing, image recognition, machine vision, or a related field or (2) a Bachelor's Degree in Electrical Engineering or Computer Engineering or the equivalent plus at least three years of experience in the field of image processing, image recognition, machine vision, or a related field. Ex-1002, ¶24.

## IX. PRIORITY DATE

The '293 Patent purports to claim priority to a filing date of February, 23, 2001 and a foreign application dated February 24, 2000. Ex-1001, Certificate of Correction.

## X. CLAIM CONSTRUCTION

Certain terms of the '293 Patent were previously construed; further claim construction is not required for this IPR.

### A. "histogram"

In a prior district court proceeding, a district court construed the term "histogram" to mean "a statistical representation of the frequency of occurrence

with which values of a parameter fall within a series of intervals." Ex-1011, 13. The specific construction of "histogram," is irrelevant here, because the prior art expressly discloses histograms.

### B. "the [at least two] histogram calculation units being configured to form a histogram representative of the parameter"

In a prior IPR, the PTAB adopted a construction for this term proposed by the Patent Owner (which the prior petitioner took no position on). The PTAB construed the term "the [at least two] histogram calculation units being configured to form a histogram representative of the parameter" to mean "the [at least two] histogram calculation units being configured to form a histogram representative of *at least one common parameter*." Ex-1005, 12–14 (emphasis original).

Petitioner reserves the right to dispute this construction in other proceedings, including to the extent the claim is argued to require a "common" parameter. However, there is no need to address that dispute here, where the prior art discloses Claim 1 even under the Board's narrow "common parameter" construction, applied by Petitioner here for purposes of this proceeding only.

### C. "wherein the validation signal is produced from time coincidences signals …so that the calculation of the histogram depends on the classification signals carried by the time coincidence bus"

In a prior district court proceeding, the court rejected a defendant's proposal that this term should be construed to mean "wherein the validation signal is produced when two or more classification signals satisfy stored conditions at the

unit receive[s] via bus 23 the output of each of the classifiers, in this case numbered 0 …p….”), 32, 33, 38.

**e. 1[d]**

For each of the alternative events relied upon in these two grounds, Pirim discloses configuring its system to have "at least two histogram calculation units for the treatment of the at least one parameter," as claimed, because each configuration uses two of histogram processor 22a, and each histogram processor 22a includes histogram blocks for parameters such as x- and y- position. Ex-1002, ¶¶85–93. The two histogram blocks for x-position (one in each of the two histogram processors 22a), for example, satisfy the limitation.

***First***, for the drowsy driving application, Pirim explains that "[m]ovement of eyelids is characterized by criteria that include high speed vertical movement of pixels with the hue of skin." Ex-1018, 49. Pirim also discloses making detection "more robust by detection of high values of CO, by detection of vertical movement, by detection of high velocity, and by detection of hue." *Id.*, 49, 53. And Pirim discloses forming histograms representative of the x and y position parameters, shown in Figure 27. *Id.*, 50. In essence, Pirim discloses configuring histogram processor 22a to include histogram blocks for CO, DI, velocity, hue, x position, and y position, and using those parameters to classify pixels and create x and y projection histograms shown in Figure 27, below.




Fig. 27

*Id.*, Fig. 27; Ex-1002, ¶¶29–31 (explanation of projection histogram).

Pirim also explains that tracking could be "lost" and discloses "replicating" the elements of the invention, specifically, using a second processor 22a: "[T]he system could be programmed, using a common controller attached to ***two histogram formation processors of the type shown in Fig. 11*** [in the incorporated document, which is Figure 12 in Pirim] to track a single target by its velocity, and/or color, and/or direction, etc."[2] Ex-1021, 37:15–21. "In this manner, the system could continue to track a target if, for example, the target stopped and the track based upon velocity and direction was lost, since the target could still be tracked by color." *Id.* In essence, Pirim discloses that if the histogram processor 22a that generates Figure 27 above—which is formed partly based on a "high

[2] By disclosing "replicating" elements of the invention and using "two histogram formation processors of the type shown in Figure 11," the incorporated application is referring to two of a complete "histogram processor 22a." *See* Ex-1021, 24:5–10. The incorporated application refers to elements 25–29 in Figure 11 as "histogram formation blocks," not as processors. *Id.*, 24:5–25:14.

velocity" and "vertical" direction criteria (Ex-1018, 49)—loses tracking because the target stops, its x- and y-projection histograms will not be able to generate useful information for Figure 27. But the second histogram processor 22a could still generate useful x- and y-projection histograms and continue tracking by using another set of criteria focused on color, until tracking is regained by the first processor.[3] A mockup of the additional processor is shown on Figure 10:

[3] Pirim's explanation reflects the fact that a given histogram block for a parameter cannot be reused during one frame to attempt tracking based on different criteria, because the memory for each block only stores one histogram, and is only cleared "between frames." Ex-1018, 27, 31.




Ex-1021, Fig. 10.

This configuration of Pirim, with two "replicated" copies of histogram processor 22a, discloses "at least two histogram calculation units for the treatment of the at least one parameter." Specifically, the "two histogram calculation units" can be mapped to the two x-position histogram blocks (one in each histogram processor 22a), or to the two y-position histogram blocks, or the blocks for the other parameters.

Moreover, having two copies of histogram processor 22a meets the board's construction requiring "the [at least two] histogram calculation units being configured to form a histogram representative of at least one *common* parameter."

Pirim teaches that each of the two histogram processors 22a includes histogram blocks for luminance, velocity, direction, CO, x position, y position, and hue, (although one of them would not use the velocity and direction histogram blocks because it assumes the object has stopped moving). Ex-1018, 49, 52–55, 57; Ex-1021, 37. Pirim also teaches that "the system of the invention generates in real time, histograms of each of the parameters being detected." Ex-1018, 35. Thus, there would be two histogram blocks each forming a histogram representative of the x-position parameter, two forming a histogram of the y-position parameter, etc. So, in this example, a common parameter would have included the x-position parameter, the y-position parameter, etc.

***Second***, for the weapons targeting application, Pirim discloses tracking the target using criteria including the position of the target (defined by a calculated bounding box), "velocity greater than zero, or any other criteria that define the edges of the object," whether the object is moving to the "right," and the x and y positions of the pixels. Ex-1021, 34:4–37:2. "Histograms are then formed by x and y histogram formation units 28 and 29" to effect tracking. *Id.*, 35:11–12.




*Id.*, Fig. 23.

Pirim explains that "the only pixels that will be processed by the system are those falling within the bounded area." *Id.*, 35:1–2. Thus, Pirim's initial explanation only allows for creating the projection histograms and tracking a single target in a limited area. However, Pirim then explains that "while the invention has been described with respect to tracking a ***single*** target, it is foreseen that ***multiple*** targets may be tracked, each with user defined classification criteria, by ***replicating*** the various elements of the invention." *Id.*, 37:12–15. Thus, a POSITA would have understood this disclosure to refer to the fact that two, replicated, copies of the histogram processor 22a are required to track two targets, a first for tracking a first target, and a second for tracking a second target. Each histogram processor 22a tracks a target based on different criteria, including different x- and y-position criteria, corresponding to different areas of the frame. But the histogram processors 22a would include the same sets of histogram

blocks—including histogram blocks for x-position, y-position, velocity, direction, CO, and luminance. Thus, the weapons targeting embodiment also meets the Board's "common parameter" construction, because each histogram processor 22a would form at least an x-projection histogram for the x-position parameter, a y-projection histogram for the y-position parameter, etc.

Pirim's disclosure of the configurations for detecting each of the above two independent events is anticipatory because the cited teachings are part of the same embodiment. *See supra*, Part XII.A.2.a(2). Alternatively, it would have been obvious to combine the cited teachings because Pirim incorporates them by reference, and because the discussion of "replicating" the elements of the invention applies generally to all embodiments as it refers generally to tracking any target. Ex-1002, ¶92. Further, a POSITA would have been motivated by the benefit stated by Pirim—the ability to track multiple targets in a frame, or a single target that stops moving, which one histogram processor 22a could not do on its own. Ex-1021, 37:7–21. A POSITA would have had a reasonable expectation of success because Pirim explains how to make the combination. *Id.*

**f. 1[e]**

Pirim discloses and teaches this limitation. Ex-1002, ¶¶95–99. The requirements are discussed below in reverse order because the claim has them backwards in regards to how the '293 Patent explains the system works (*i.e.*, the

**b. 1[a]**

Pirim discloses "a data bus" as explained above. *See supra*, Part XII.A.2.a.

**c. 1[b]**

Pirim discloses a control unit, as explained above. *See supra*, Part XII.A.2.b.

**d. 1[c]**

Pirim discloses the claimed "time coincidences bus carrying at least a time coincidence signal," as explained above. *See supra*, Part XII.A.2.d. In the combination of Pirim and Bolle, the specific "time coincidences signal" is identified below in connection with Limitation 1[f], which also requires "time coincidences signals."

**e. 1[d]**

Pirim and Bolle teach Limitation 1[d]. Ex-1002, ¶¶127–134.

Bolle teaches two histograms representing a common parameter. As shown in Figure 14, below, Bolle teaches the calculation of two hue histograms in two segmented areas of the frame—area 1420 (the grapes) and area 1410 (the leaves).




Ex-1019, Fig 14. "FIG. 14 shows an image 1405 where segmented object image 130 has two distinct regions, i.e., the leaves 1410 and the grapes 1420." *Id.*, 19:18–31. After the regions are segmented, "[t]he regions are histogrammed ….separately. …[H]istograms 1450 and 1455 correspond to the first 1410 and second 1420 region, respectively." *Id.* In essence, Bolle teaches use of two hue histograms created based on criteria including the hue value and the position of a given pixel as being part of the grapes or the leaves.

Pirim and Bolle in combination teach "at least two histogram units for the treatment of the at least one parameter." To calculate Bolle's histograms, Pirim teaches use of two of Pirim's histogram processors. Pirim explains that to track multiple targets (here, grapes and leaves), the elements of the invention can simply

be "replicated." Ex-1021, 37. Thus, Petitioner replicates the histogram processor 22a, as shown below, from Figures 11 and 12.




FIG. 12

Histogram Processor A: Makes hue histogram of area 1420




FIG. 12

Histogram Processor B: Makes hue histogram of area 1410

Ex-1018, Fig. 12.

A POSITA would have been motivated to use two copies of Pirim's histogram processor 22a to calculate Bolle's two hue histograms for the reasons discussed above. *See supra*, Part XII.B.1.

Bolle teaches that only pixels in the segmented region of grapes should be included in the grapes histogram, and only pixels in the segmented leaves region should be included in the leaves histogram. Ex-1019, 19:18–31, Fig. 14. Pirim teaches how to implement this teaching in Pirim's processor. Pirim discloses "a

semi-graphic masking function to select pixels to be considered by the system." Ex-1018, 31. For example, if Pirim's system is being used to

> detect the lanes of the road, the pixel information of the road at the farthest distances from the camera generally does not contain useful information. Accordingly, in such an application, ***the semi-graphic memory is used to mask off the distant portions of the road by setting semi-graphic memory 50 to ignore such pixels***…. In operation, for any pixel under consideration, an AND operation is run on the validation signal for such pixel and the content of semi-graphic memory 50 for the sub-matrix in which that pixel is located. If the content of semi-graphic memory 50 for the sub matrix in which that pixel is located contains "0", the AND operation will yield a "0" and the pixel will be ignored…. ***This would enable any desired pixels of the image to be considered or ignored as desired***.

*Id*., 32. The semi-graphic memory 50 (blue) is shown in Figure 12, above.

Thus, to implement Bolle's teaching of excluding non-grapes pixels from the grapes histogram, and non-leaves pixels from the leaves histogram, a POSITA would have used Pirim's semi-graphic masking function. The first semi-graphic memory 50 in histogram processor A would be configured with a "1" for each pixel location that is a grapes pixel, and a "0" otherwise. And, the second semi-graphic memory in histogram processor B would be configured with a "1" for each pixel location that is a leaves pixel, and a "0" otherwise.

A POSITA would have been motivated to combine Pirim's "semi-graphic masking function" with Bolle's algorithm because Pirim discloses using the semi-graphic masking function for the purpose of excluding from the histograms pixels

in areas that do not contain useful information. Ex-1002, ¶133; Ex-1018, 31–32. And that purpose is exactly the same as Bolle's, which discloses ignoring pixels outside of the segmented areas. Ex-1019, 19:18–31, Fig. 14. Thus, the two references disclose the same functionality, and Pirim discloses the specific circuit for achieving it.

Further, a POSITA would have been motivated to use two separate semi-graphic memories, one for each histogram processor A and B, because each semi-graphic memory must have its memory locations set to a "1" or a "0" to indicate whether to increment a pixel into the histogram, and the memory location cannot be simultaneously set to hold two different values. Ex-1002, ¶134; Ex-1018, 31–32. And, the memory location must be ANDed with the validation signal to control incrementation, and it would not work to AND the semi-graphic memory for leaves with the validation signal used in the grapes histogram processor A. Thus, two separate memories, each configured for either the grapes or the leaves, would have been necessary. Due to that fundamental design, Pirim teaches "replicating" its elements for tracking multiple targets (such as grapes and leaves). Ex-1021, 37; *see supra*, Part XII.B.1. A POSITA would have had a reasonable expectation of success because Pirim explains exactly how to implement the semi-graphic masking function. Ex-1002, ¶134; Ex-1018, 31–32.

**f. 1[e]**

Pirim and Bolle in combination teach Limitation 1[e]. Ex-1002, ¶¶135–142.

As explained above, each of Pirim's histogram blocks are configured to, as claimed, "determine by classification a binary classification signal resulting from a comparison of the parameter and a selection criterion C." *See supra*, Part XII.A.2.f. In the Pirim-Bolle combination, the histograms depicted in Bolle's Figure 14 show six classes for the hue values for the grapes and leaves. Ex-1019, Fig. 14 (showing 6 columns in each histogram). For example, a POSITA would understand that these six classes could be green, yellow, cyan, red, blue, and magenta. Thus, the classifiers for the hue histogram blocks in histogram processors A and B would each have six registers numbered 0 to 5 for classifying each pixel's hue value based on the classification criterion C in each register, which would be "1." Ex-1018, 27 ("the system may select for processing only data points in ***any*** selected classes within ***any*** selected domains"). Bolle does not require that the histogram exclude any pixels based on hue, meaning all hue classes would be enabled in the classifiers for histogram processors A and B.

Pirim's histogram processor 22a also includes standard histogram blocks for other parameters such as velocity, direction, time constant CO, x position, and y position. *Id.*, Fig. 12. The classifiers for these blocks would also have "1" for each selection criteria in their registers, so that the classification results of those blocks

do not prevent incrementation of the hue histogram block (those parameters, while included in Pirim's basic figures, are not necessary for Bolle's algorithm).

A POSITA would have been motivated to configure the classifiers for histogram processors A and B in this manner because Pirim teaches classifying hue using the classifier, and programming the classifier to detect the criteria of interest. Ex-1002, ¶138; Ex-1018, 2 (disclosing forming histogram of "hue" based on "user selected combinations" of criteria), 28 ("register 106 …enables the classification criteria to be set by the user"). A POSITA would have had a reasonable expectation of success because Pirim specifically explains how to program the registers with a "1" or a "0" based on any user defined criteria. *Id.*, 27–28; Ex-1002, ¶138.

As discussed above, each of Pirim's histogram blocks are "configured to form a histogram representative of the parameter as a function of a validation signal." *See supra*, Part XII.A.2.f. The histogram calculation blocks each include a validation unit 31 and a validation signal V2 (purple):




As taught by Pirim, in the combination of Pirim and Bolle the validation unit of the hue histogram block in histogram processor A would check whether the classification result from the classifiers of all histogram blocks equaled "1" and would generate a validation signal. Ex-1018, 28–29. The validation signal would then be ANDed with the semi-graphic memory value corresponding to that pixel's position, to check whether the pixel was a grapes pixel. *Id.*, 32. If the resulting validation signal was a "1," then the histogram would be incremented. *Id.* The validation block of the hue histogram block in histogram processor B would similarly check the classification results of the histogram blocks and would AND its validation signal with the content of its semi-graphic memory corresponding to the pixel's position, and would produce a validation signal of "1" if all classification signals were equal to "1."

A POSITA would have been motivated to configure the validation units for histogram processors A and B in this manner because Pirim teaches configuring the validation unit for detecting the desired criteria. Ex-1002, ¶142; Ex-1018, 2 (disclosing forming histogram of "hue" based on "user selected combinations" of criteria), 28–30, 33–35, 38, 44, 46 ("Controller 42 may then set the validation units to detect DP, CO, hue, and/or direction, as appropriate."), 52, 55. A POSITA would have had a reasonable expectation of success because Pirim specifically explains how to program the registers with a "1" or a "0" based on any user defined criteria. *Id.*, 27–28; Ex-1002, ¶142.

More generally, as explained above and incorporated here, a POSITA would have been motivated to combine Pirim and Bolle by using Pirim's generic histogram processors to create the two hue histograms taught by Bolle. *See supra*, Part XII.B.1.

The combination of Pirim and Bolle meets the "common parameter" construction (Ex-1005, 14) because as discussed above, histogram processors A and B each have a hue histogram block and each form a hue histogram.

**g. 1[f]:**

The combination of Pirim and Bolle teaches this limitation. Ex-1002, ¶144.

Pirim discloses, as claimed, that "the classification signal is sent to the time coincidences bus." As explained above in connection with Limitations 1[c] and

not pursue in the parallel district court action the grounds of invalidity presented in this Petition, if instituted. *See Sand Revolution*, IPR2019-01393, Paper 24 at *11–12.

Factor 6 (other circumstances) favors institution because this Petition makes a strong showing of invalidity. *See supra*, Part XII. Thus, all factors favor institution.

## XV. CONCLUSION

The invalidity grounds presented above are reasonably likely to prevail, and IPR should be instituted.

Respectfully Submitted,

*/s/ Clarence A. Rowland*
(Reg. No. 73,775)

## CERTIFICATE OF WORD COUNT

Pursuant to 37 C.F.R. §42.24(d), Petitioner certifies that this petition includes 13,992 words, as measured by Microsoft Word, exclusive of the table of contents, the table of exhibits, the mandatory notices under §42.8, the certificates of service, the word count, and the exhibits.

## CERTIFICATE OF SERVICE

The undersigned certifies pursuant to 37 C.F.R. §42.6(e) and §42.105 that on October 25, 2022, a true and correct copy of this Petition for *Inter Partes* Review was served via express mail on the Patent Owner at the below correspondence address of record:

Byrne Poh LLP/IPT
400 Rella Blvd.
Ste. 165, #106
Suffern, NY 10901

A courtesy copy was sent to the below counsel via electronic mail.

Michael Daley Karson (mkarson@winstead.com)
Phillip Brett Philbin (pphilbin@winstead.com)
Sarah Shawn Williamson (swilliamson@winstead.com)
Jamie H. McDole (mcdole@winstead.com)
Winstead PC – Dallas
2728 N. Hardwood Street, Suite 500
Dallas, TX 75201

Dated: October 25, 2022

Respectfully submitted,

*/s/ Clarence A. Rowland*
(Reg. No. 73,775)
Email: crowland@omm.com
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
*Attorney for Petitioner*